IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KEVIN T. LAWSON,

        Plaintiff,

vs.                                              **Case No. 06-4136-RDR**

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

---

### **MEMORANDUM AND ORDER**

Plaintiff has filed applications for disability insurance benefits and supplemental security income payments pursuant to the Social Security Act. An administrative hearing was conducted by an Administrative Law Judge (ALJ) on September 7, 2005. The ALJ issued a decision rejecting plaintiff's applications for benefits on April 26, 2006. Defendant has adopted the decision to deny benefits. This case is now before the court to review defendant's decision.

STANDARD OF REVIEW

The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004)(quoting

Richardson v. Perales, 402 U.S. 389, 401 (1971)).  The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  Glenn, 21 F.3d at 984.

ALJ DECISION

The ALJ's decision set forth the five-step evaluation process followed in these cases:

> (1) Is the claimant engaging in substantial gainful activity; (2) Does the claimant have severe impairment(s); (3) Does the impairment or combination of impairments meet or equal an impairment listed in Appendix 1; (4) Does the impairment or combination of impairments prevent the claimant from doing past relevant work; (5) Does the impairment or combination of impairments prevent the claimant from doing other work that exists in significant numbers in the national economy.  (20 C.F.R. § 404.1520 and 416.920).

(Tr. 17).

The ALJ described plaintiff's claim as alleging "an inability to work beginning October 10, 2002, due to head trauma, <u>a nail puncture ½ inches into his brain</u>, shakes, headaches, nervousness, anxiety, insomnia, depression, memory loss, irritability, stress, and an inability to be around a group of people."  (Tr. 16) (emphasis added).  The nail puncture was caused by a nail gun accident on the alleged date of disability.

The ALJ found that plaintiff was not engaged in substantial gainful activity from the time of the nail gun accident and that he met the earnings requirement for disability insurance benefits.  He

found that plaintiff had the following severe impairments: depression, personality disorder, anxiety and continued marijuana abuse.  He determined that plaintiff was not credible as to the impact of his alleged impairments on his ability to work.  The ALJ held that plaintiff retained the residual functional capacity to perform heavy work, but was moderately limited in his ability to understand and carry out detailed instructions and to maintain concentration and attention for extended periods.  He also held that plaintiff is moderately limited in his ability to work in coordination with or proximity to others without being distracted by them; to interact appropriately with the general public; and in his ability to get along with co-workers or peers without distracting them.  Finally, the ALJ found that these impairments did not preclude plaintiff from performing his past relevant work as a carpet cutter, a construction worker and a cabinet builder.  (Tr. 23-24).

Other parts of the ALJ's decision will be discussed in the context of the argumentation in this case.

MEDICAL RECORDS

The medical records in this case show that plaintiff was taken to an emergency room on October 10, 2002 for the removal of a nail from his left frontal lobe.  The nail protruded into plaintiff's brain.  (Tr. 188-89).  Prior to surgery, plaintiff did not lose consciousness.  He denied weakness, numbness or tingling.  (Tr.

189). He had headaches on the days after the surgery. But no significant bleeding was found before, during or after the surgery.

On November 18, 2002, plaintiff had an appointment with his surgeon. He complained of headaches primarily on the right side of his head. The headaches were particularly severe in the late afternoon. He also complained of trouble sleeping and concentrating. (Tr. 201). A repeat CT scan was ordered. No bleeding or swelling was detected. (Tr. 202).

Plaintiff saw Dr. Buller in November 2002, January 2003 and June 2003. (Tr. 179-181). The January 2003 appointment appeared to be for flu symptoms. Plaintiff complained of headaches during each appointment. Dr. Buller prescribed Ambien and Celebrex. (Tr. 179).

Plaintiff was seen at The Community Clinic in June 2003 and September 2003. (Tr. 204-05). He complained of headaches, short-term memory problems, and hand shakiness. The headaches were termed "migrainous in nature." (Tr. 204). Plaintiff was considered to have "anxiety disorder/depression" (Tr. 204) and headaches secondary to head trauma. (Tr. 205). Plaintiff expressed similar problems when he was referred for psychological treatment and counseling in 2003 and 2004. Dr. Huet wrote in February 2004 that plaintiff suffered from major depressive disorder, single, moderate; anxiety disorder NOS; and complaints of cognitive dysfunction due to traumatic brain injury. He prescribed medication (Effexor and

4

Remeron) for plaintiff. He believed plaintiff was disabled and would likely remain so for over 1 to 2 years, commenting that plaintiff had suffered "significant brain trauma." (Tr. 235).

Plaintiff visited the St. Paul Medical Clinic several times from October 2004 through February 2005. He complained once of headaches on November 9, 2004 (Tr. 265). On January 18, 2005 his assessment was: depression and anxiety; also disability secondary to a punctured skull with neurological deficits. The neurological deficits apparently referred to decreased fine motor skills. Wellbutrin and Tranxene were prescribed. (Tr. 262).

Plaintiff was examined by Dr. Sen at the Southeast Kansas Mental Health Center on several occasions from March 2005 through October 2005. Plaintiff made complaints of depression, anxiety, short-term memory difficulties, and lack of concentration. (Tr. 272-78). He complained of headaches on June 29, 2005. (Tr. 273). On March 24, 2005 he said he had become clumsy with his hands which made it difficult for him to work. (Tr. 276). Dr. Sen rendered a diagnosis of: depressive disorder, NOS; cognitive disorder, NOS; and post traumatic stress disorder. (Tr. 277). He gave a GAF score of 45-50. (Tr. 277). Plaintiff was continued on Wellbutrin and Tranxene. Paxil was also tried. Dr. Sen stated in August 2005 that "based on his current functioning including limitations [upon] concentration, memory, variability of mood, [plaintiff] would have difficulty sustaining gainful employment." (Tr. 272).

5

On April 8, 2005 plaintiff was referred to Dr. Kumar, a neurologist. Dr. Kumar's report reflects plaintiff's complaints of persistent headache, clumsiness, difficulties of concentration and short-term memory, anxiety and depression. (Tr. 281-82). Plaintiff was started on Elavil for his headaches. Dr. Kumar's final impression in April was: post-traumatic, secondary headache disorder with migrainous features; major depressive disorder; generalized persistent headache due to depression, cognitive impairment and emotional lability due to depression; post-traumatic stress disorder; generalized anxiety and "doubt seizures." (Tr. 282). During a follow-up visit on July 8, 2005, Dr. Kumar found post-traumatic syndrome with frequent headaches and depression. (Tr. 280).

PLAINTIFF'S ARGUMENTS

Step Two Analysis

Plaintiff's first argument is that the ALJ erred by failing to find that plaintiff's traumatic brain injury and headaches were "severe" impairments at step two of the five-step social security disability analysis. A "severe" impairment is one that significantly limits an individual's physical or mental ability to perform basic work activities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, following instructions, using judgment and responding appropriately to co-workers, supervisors, and usual

workplace situations and changes.  20 C.F.R. §§ 404.1521, 416.921. However, if it is determined that a severe impairment does exist, then all impairments, whether severe or non-severe, must be considered in determining the answers to the other steps of the process of deciding benefits eligibility.  20 C.F.R. § 404.1523.

In this case, the ALJ found that plaintiff suffered from severe impairments, although he did not categorize traumatic brain injury or headaches as one of plaintiff's severe impairments.  Under social security regulations, the ALJ was obliged to consider all of plaintiff's alleged impairments, and whether or not they were "severe" in deciding whether plaintiff qualified for disability benefits.  Therefore, the court does not find there was a material error caused by a failure to treat plaintiff's traumatic brain injury or headaches as a "severe" impairment during the ALJ's step-two analysis.[1]

### Treating and reviewing physicians

Plaintiff contends that the ALJ failed to assign proper weight to the opinions of the treating and reviewing physicians in this case.  "A treating physician's opinion must be given substantial

---

[1] Nevertheless, the court questions why the ALJ, in looking at this record, would find sufficient evidence to consider cannabis abuse to be a severe impairment, but not headaches. The record indicates that plaintiff has used marijuana with varying frequency. It appears this conclusion was based upon plaintiff's statements, as are the statements in the record regarding plaintiff's headaches. The record does not indicate any medical signs or laboratory findings that the use of marijuana by plaintiff significantly impairs plaintiff's ability to work. In the court's opinion, a stronger record supports such a finding regarding plaintiff's headaches.

7

weight unless good cause is shown to disregard it.  When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report not the other way around."  Goatcher v. United States Department of Health & Human Services, 52 F.3d 288, 289-90 (10th Cir. 1995) (citation and quotation omitted).

Dr. Huet and Dr. Sen are treating physicians in this case.  They both rendered opinions that plaintiff was unable to perform work activity.  Dr. Diller is a reviewing physician who concluded that, although plaintiff has some limitations on his ability to function, he retains a sufficient residual functional capacity to perform work, providing that the work does not require processing instructions that are too complex.  (Tr. 238).

All three physicians filled out forms giving each doctor's assessment of plaintiff's mental residual functional capacity. (Tr. 236 - Diller, Tr. 256 - Huet, Tr. 258 - Sen).  Each doctor reached different conclusions.  Of the twenty categories of performance listed on the form, Dr. Huet found "marked" limitations in 12 categories and "moderate" limitations in 8 categories; Dr. Sen found "marked" limitations in 4 categories, "moderate" limitations in 7 categories, and no significant limitations in 9 categories; and Dr. Diller found "marked" limitations in 0 categories, "moderate" limitations in 5 categories, no significant limitations in 11

categories, and no evidence of limitations in 4 categories. Dr. Huet found "marked" and "moderate" limitations in the areas of understanding and memory, concentration and persistence, social interaction, and adaptation. Dr. Sen found "marked" and "moderate" limitations in the areas of understanding and memory, and concentration and persistence. He found "moderate" limitations in the areas of social interaction and adaptation. Dr. Sen agreed with Dr. Huet that plaintiff had "marked" limitations in: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration to extended periods; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. There was substantial disagreement regarding plaintiff's capacity to travel in unfamiliar places or use public transportation. Dr. Huet found this markedly limited. Dr. Sen found no significant limitation.

Dr. Sen agreed with Dr. Diller that plaintiff had a "moderate" limitation in his ability to work in coordination and in proximity of others without being distracted. Dr. Sen and Dr. Diller also agreed (contrary to Dr. Huet) that plaintiff had no significant limitation in his ability: to understand and remember very short and simple instructions; to carry out very short and simple

instructions; to sustain an ordinary routine without special supervision; to make simple work-related decisions; to ask simple questions or request assistance; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Contrary to Dr. Sen, Dr. Diller found no limitation in plaintiff's ability to understand and remember detailed instructions and plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Sen found "marked" limitations in these categories.

The ALJ rejected the conclusions of Dr. Huet for three reasons. First, according to the ALJ, the record does not show that Dr. Huet examined the medical records concerning plaintiff's head injury, and the record suggests that he relied almost entirely upon plaintiff's subjective statements. Second, Dr. Huet's opinion is not consistent with Dr. Sen's opinion. Finally, the ALJ noted that Dr. Huet's opinion is not consistent with the treatment records concerning plaintiff's office visits. The ALJ rejected the conclusions of Dr. Sen as well, although he asserted that he gave some weight to Dr. Sen's opinions in reaching a conclusion regarding residual functional capacity. The ALJ found that Dr. Sen's conclusions did not correlate with the records of plaintiff's office visits. He also noted that the forms used for the ratings of mental residual

10

functional capacity do not define what is meant by a "marked" rating. The ALJ credited the findings of Dr. Diller, the reviewing physician, because he thought those findings were more consistent with the objective medical evidence "concerning [plaintiff's] cognitive functioning and social problems." (Tr. 22). This seems somewhat at odds with a statement in Dr. Diller's report that: "No medical opinion regarding cognitive and emotional capacity for performing competitive work tasks is in evidence." (Tr. 254). As plaintiff's counsel notes, the ALJ did not specifically identify the objective medical evidence which <u>is</u> consistent with Dr. Diller's conclusions. We would further note that Dr. Sen diagnosed plaintiff with a cognitive disorder. (Tr. 278).

Plaintiff contends that the ALJ did not properly consider the factors listed in the regulations for the evaluation of a medical opinion. Those factors are: 1) the length of the treatment relationship and the frequency of the examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) the consistency between the opinion and the record as a whole; 5) whether the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Goatcher</u>, 52 F.3d at 290; 20 C.F.R. § 404.1527(d). In addition,

11

plaintiff contends that the ALJ did not give more weight to the opinions of treating sources like Dr. Huet and Dr. Sen, contrary to regulations providing for such analysis. See 20 C.F.R. § 404.1527(d)(2). Plaintiff also asserts that the ALJ erred by failing to clarify an ambiguity the ALJ identified in the opinion of the treating sources and that the ALJ erred by speculating that the treating physicians relied excessively upon plaintiff's subjective statements in reaching their conclusions regarding plaintiff's functional capacity.

We believe these arguments require a remand of this case for further consideration of the medical evidence and perhaps for a consultative examination.

We will assume that the ALJ considered the length of the treatment relationship and the number of examinations by Dr. Huet and Dr. Sen. We will also assume that the ALJ considered the specialization of these physicians. However, we do not believe the ALJ properly considered the degree to which their opinions were supported by relevant evidence and the consistency between their opinions and the record as a whole. The ALJ does not discuss the consistency of Dr. Huet's opinion with his treatment notes. While these notes are difficult to read, they do appear consistent with his opinion. The notes reflect plaintiff's problems with short-term memory, concentration, depression, anxiety, social relationships, sleep and headaches. The ALJ discounts these notes, perhaps, with

his reference to Dr. Huet's reliance upon plaintiff's subjective statements.  However, the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. Thomas v. Barnhart, 147 Fed.Appx. 755, 2005 WL 2114163 (10th Cir. 2005).  Furthermore, the Tenth Circuit has repeatedly noted "that a psychological opinion may rest either on observed signs and symptoms or on psychological tests." Langley v. Barnhart, 373 F.3d 1116, 1122 (10th Cir. 2004); Robinson v. Barhart, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing 20 C.F.R. Subpart P, App.1 § 12.00(B)).  The ALJ may believe that Dr. Huet's treatment notes are more often a recording of plaintiff's subjective statements as opposed to "observed signs and symptoms," but this is not clear in his opinion or on the record.

The ALJ dismisses Dr. Huet's opinion in part because it is not consistent with the medical tests taken of plaintiff's injury.  We agree with plaintiff that, to a substantial extent, this is comparing apples to oranges.  The physical tests indicate that plaintiff's injury has healed; the tests do not reflect brain damage.  However, every mental health expert on the record has made a finding of some level of mental health impairment which, on the record, appears to have arisen after plaintiff's head injury.  None of the medical sources, only the ALJ, expressly discredits the symptoms reported by plaintiff on the basis of an alleged absence of objective medical evidence.

The ALJ also states that Dr. Huet's opinion is not consistent with his treatment records because the records do not reflect that plaintiff was significantly impaired. (Tr. 21). However, the ALJ never describes the treatment records in detail. We perceive the treatment records as being consistent with Dr. Huet's opinion. The ALJ also finds that the objective evidence concerning plaintiff's cognitive functioning and social problems is more consistent with Dr. Diller's opinion. (Tr. 22). However, again, the ALJ does not describe what that objective evidence is.

The ALJ further dismisses Dr. Huet's opinion as being inconsistent with Dr. Sen's opinion, although both ultimately concluded that plaintiff would "have difficulty" (Dr. Sen - Tr. 278) or be disabled from (Dr. Huet - Tr. 235) sustaining gainful employment. The records of the two doctors indicate that Dr. Huet found plaintiff to be more markedly disabled. But, we do not find the inconsistency as good grounds to dismiss each treating physician's opinion, in favor of the opinion of a nonexamining doctor - Dr. Diller. In this respect, the ALJ's analysis does not appear to properly evaluate the treating physicians' opinions in light of the record as a whole.

Similarly, the ALJ dismisses Dr. Sen's opinion in part because during one visit plaintiff reported "some improvement in depression and anxiety" and because Dr. Sen observed that plaintiff was pleasant, cooperative, alert, oriented, logical and coherent. We

do not believe that isolating one visit where plaintiff reported "some improvement" properly analyzes Dr. Sen's opinion in light of the whole record. Nor do we think that plaintiff's demeanor during a doctor's visit provides sufficient grounds to discount a treating physician's opinion that plaintiff suffers from depression and an anxiety disorder.

Finally, we agree with plaintiff that the ALJ improperly rejected the opinions of Dr. Huet and Dr. Sen, at least in part, because the opinions were unclear. The ALJ stated:

> [T]he undersigned has not afforded controlling weight to either of the treating source opinions in their ratings of the claimant's functional abilities. This is due in part to the inconsistencies between the ratings and their medical charts, and in part to the fact that the forms which were used for the ratings do not explain or define what is meant by a marked rating.

(Tr. 21). If a treating source's opinion is unclear because it does not explain or define what is meant by a "marked" rating, then it is the duty of the ALJ to seek clarification from the medical source. See 20 C.F.R. §§ 404.1512(e)(1); 416.912(e)(1).

In summary, we find that the ALJ failed to properly analyze the opinions of the treating physicians and the reviewing physician. The ALJ did not adequately explain the failure to give the treating physicians' opinions controlling weight. The ALJ did not properly analyze the physicians' opinions in light of the entire record and did not examine and discuss the degree to which the opinions were supported by relevant evidence. In addition, to the extent that the

15

opinions were unclear, the ALJ did not attempt to clarify the opinions.

### Credibility

Plaintiff contends that the ALJ's analysis of plaintiff's credibility is not supported by substantial evidence.

Regarding credibility, the ALJ found that overall the medical record did not paint as severe a picture as alleged by plaintiff. He further noted that plaintiff did not seek mental health treatment and counseling until well after he incurred his head injury. He also felt that plaintiff's activities of daily living did not corroborate plaintiff's claims of disability. The ALJ stated "there is no evidence [plaintiff] is unable to perform activities of daily living." (Tr. 22). The ALJ indicated that the facts showed that plaintiff lived alone and was responsible for the maintenance of his household. The ALJ also mentioned that plaintiff used marijuana, at times on a daily basis and at other times twice a week. The ALJ does not explain, however, why plaintiff's marijuana use impacts plaintiff's credibility. Finally, the ALJ noted that plaintiff was not employed at the time of the head injury and did not testify that he was seeking employment. (Tr. 22).

We agree that the credibility analysis is not supported by substantial evidence. Every mental health professional has indicated in the record that plaintiff suffers from depression and anxiety. Medication has consistently been prescribed for

16

plaintiff's condition. The two treating physicians have rendered an opinion that plaintiff is disabled from work. There is also undisputed medical evidence of a head injury which constitutes objective evidence to corroborate plaintiff's claims of headaches. See Pasco v. Commissioner of Social Security, 137 Fed.Appx. 828, 2005 WL 1506343 (6th Cir. 2005) (gunshot to the head is objective evidence suggesting a reason for having headaches). Admittedly, however, there is no objective evidence or medical evidence which demonstrates the severity of plaintiff's headaches.

Any delay in seeking mental health treatment is not persuasive grounds for questioning plaintiff's credibility. "[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996); see also, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989) (questioning the practice of chastising one with a mental impairment for the exercise of poor judgment in seeking rehabilitation); Godbey v. Apfel, 238 F.3d 803, 810 (7th Cir.2000) (lay testimony as to mental functioning cannot be deemed non-credible simply because contemporaneous medical corroboration is lacking). We also note that under Social Security Rule 96-7p, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment

without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." The record does not indicate any questions or development of the record to determine why plaintiff may not have sought treatment for depression or other mental impairment earlier.

The ALJ makes a bald statement but does not explain why plaintiff's activities of daily living fail to corroborate his disability claim. That plaintiff lives alone does corroborate his claims of having difficulty being around people. The ALJ states that plaintiff is "solely responsible for maintenance of his household, inside and out." (Tr. 22). This statement does not describe what maintenance plaintiff actually performs and whether such work is inconsistent with a claim of being unable to perform substantial gainful employment.

The relevance of the ALJ's reference to plaintiff's marijuana use is not well-explained. If the ALJ believes that the marijuana use contributes to plaintiff's depression, then he should have referred to some evidence in the record to support that belief. If he believes that people who smoke marijuana do not make credible claims of disability, then he should have said so and supported that position. If he thought there was a significant inconsistency between plaintiff's admission to using marijuana daily and plaintiff's later statement admitting to using marijuana twice a

week, then the ALJ should have explained why such a discrepancy was relevant to the issue of plaintiff's credibility.

Finally, plaintiff's work record may be relevant to his credibility.  But, the record is silent as to whether or not defendant was seeking employment at the time of his injury or after he was laid off from his last job.  Therefore, on this record substantial weight should not be attached to plaintiff's unemployment at the time of his injury.

Step Four Analysis

Finally, plaintiff asserts that the ALJ committed error in his step-four analysis where he concluded that plaintiff was capable of returning to his prior relevant work as a carpet cutter, construction worker or cabinet builder.  The court shall not address the specifics of this argument because the court has already sided with plaintiff upon arguments which would impact the ALJ's step-four analysis.

CONCLUSION

For the above-stated reasons, the court shall reverse the decision to deny benefits in this case and remand the case for further proceedings consistent with this memorandum and order.  On remand, the ALJ should give consideration to a consultative examination of plaintiff.  See Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997).  This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 27th day of September, 2007 at Topeka, Kansas.

                              s/Richard D. Rogers
                              United States District Judge